ETHEL BLASE, Plaintiff-Appellant, v. BENJAMIN F. AUSTIN, HENRY W. AUSTIN, ISABELLA FAIRFAX, OREON E. SCOTT, d/b/a OREON E. SCOTT and R. G. SCOTT, KATHERINE SCHULTZ, AETNA REALTY COMPANY, a Corporation, HELEN PERRY, EUGENE L. PADBERG, Trustee, and CARL M. DUBINSKY, SAMUEL E. PERRY, Trustee, and CHARLES PERRY, Defendants-Appellants, CLEMENT SUTTON, Defendant-Respondent, No. 41715—242 S. W. (2d) 29.

Division One, July 9, 1951.

Motions for Rehearing or to Transfer to Banc Overruled, September 10, 1951.

410

*Arthur F. C. Blase* and *Albert E. Hausman* for plaintiff-appellant.

*S. R. Redmond* for defendants-appellants.

*Henry D. Espy* for respondent.

414

LOZIER, C.—Plaintiff Blase sued to determine title to four real estate properties in the City of St. Louis, to set aside deeds under which certain defendants claimed, and to restrain defendant Scott from paying over to defendant Austin certain rentals collected as Austin's agent. Decree was for plaintiff as to three of the properties, and as to rentals thereon from the dates of her

deeds, and for defendant Sutton as to the other property. Plaintiff appealed as to Sutton and the other defendants appealed as to plaintiff.

The issues are the sufficiency of the evidence upon which the deeds were held invalid and the effect of a lis pendens notice as to Sutton.

Sutton was interested in one property only. Defendant Scott testified he had withheld the rentals because of the lawsuit and was willing to pay them to the parties in whom titles were decreed. For convenience, then, where we do not refer to defendants by name, we will use the terms "defendants" or "other defendants" as meaning all of the defendants except Sutton and Scott. The names of these other defendants are italicized in the hereinafter summary of record titles. (At the trial, the action was abated as to Henry W. Austin, defendant Austin's father, initially a defendant, who died June 10, 1945.) Defendant Aetna Realty Co. was a corporation owned and controlled by Austin. The properties were located at 2406 N. Sarah St., 3949 Page Ave., 3951-53 Page Ave., and 3015 Lambdin Ave., respectively, and are hereinafter referred to as the Sarah, the 3949 Page, the 3951 Page, and the Lambdin properties.

On May 6, 1941, one Alice Austin had a $500 judgment against defendants Austin and Fairfax. Plaintiff was the purchaser of the interests of these two defendants in all four properties at two execution sales. She paid $301 for the Sarah and 3949 Page properties and received a sheriff's deed dated October 29, 1943. She paid $50 for the other two properties and received a sheriff's deed dated March 15, 1944. Plaintiff claims under these deeds.

The common record title to the Sarah and 3949 Page properties was: August 26, 1938, warranty deeds to *Fairfax;* September 7, 1938, *Fairfax* trust deeds to Henry W. Austin, trustee for *Austin;* February 24 1942, *Fairfax* warranty deeds to *Charles Perry;* March 1, 1942, *Charles Perry* trust deeds to Henry W. Austin, trustee for *Austin;* January 29, 1944, trustees' deeds, [31] under foreclosure of the last mentioned trust deeds, to *Katherine Schultz;* and February 1, 1944, *Katherine Schultz* trust deeds to *Eugene L. Padberg,* trustee for *Carl M. Dubinsky.*

The record title to the Lambdin property was: September 23, 1938, warranty deed to *Austin,* subject to existing trust deed; November 28, 1941, *Austin* warranty deed to Henry W. Austin; and June 1, 1944, Henry W. Austin quitclaim deed to *Helen Perry.*

The record title to the 3951 Page property was: March 18, 1939, warranty deed to *Aetna,* and *Aetna* trust deed to Helen Hearnes, trustee for *Austin;* February 20, 1942, *Aetna* warranty deed to Henry W. Austin; March 1, 1942, Henry W. Austin trust deed to *Samuel E. Perry,* trustee for *Austin;* and August 4, 1947, Helen Stancil

416

(formerly Helen Hearnes) trustee's deed, under foreclosure of the March 18, 1939, Aetna deed of trust, to Clement Sutton.

We first consider the relative claims of plaintiff and the other defendants. The court found that plaintiff purchased the properties while the $500 judgment was a lien upon the interests of defendants Fairfax and Austin; that Fairfax, Henry W. Austin, Charles Perry, Katherine Schultz, Helen Perry, Aetna, Helen Hearnes (or Helen Stancil) and Samuel E. Perry were Austin's straws; that Austin caused the transfers to be made for the purpose of defrauding his creditors, particularly plaintiff and the judgment creditor, Alice Austin; and that the transfers were void.

The record sustains these findings and plaintiff's claims to the properties as against Scott and the other defendants. Defendant Charles Perry testified that he paid nothing for the warranty deeds to the Sarah and 3949 Page properties and received nothing for executing the trust deeds and notes. The bank, which had made loans to Austin upon three of the properties, with the trust deeds and notes as collateral, dealt only with Austin. One real estate dealer said Austin listed the four properties for sale as the owner. Another said he represented Austin in the purchase of one. Until the suit was filed Scott managed all four as Austin's agent and paid the net proceeds to Austin. Austin's inventory of his father's estate, of which he was administrator, listed no real property.

Austin's affidavits in the proceeding in which he was declared a bankrupt were in evidence. In his schedules and testimony, he swore that the notes and trust deeds were executed by the "owners" as accommodation paper to enable him to borrow money from banks; and that he did not give or loan money to Fairfax but borrowed from her. (See Munday v. Austin, 358 Mo. 959, 218 SW 2d 624, wherein Austin and Fairfax were defendants in a similar action and this court ruled the effect of these same judicial admissions.) When Fairfax signed the appeal bond in the Munday case, she swore she owned the Sarah and 3949 Page properties and that they were "clear."

None of the other defendants testified. Their only evidence was Austin's and Dubinsky's answers to interrogatories. Austin's answers reflect long and conscientious study and practice of deliberate suppression of ability to remember. Dubinsky answered that he did not own the Schultz notes and trust deeds and that he had no recollections as to these transactions. Several of the other defendants refused to answer interrogatories.

We agree with the trial judge that: "The evidence preponderates so strongly in favor of plaintiff as to the issues between plaintiff and all defendants excepting Clement Sutton that no memorandum opinion is necessary on the issues of the invalidity of the deeds and deeds of trust mentioned in plaintiff's petition." He did not err in

overruling Scott's and the other defendants' motion for a directed verdict.

All of the defendants except Sutton urge that the consideration plaintiff paid for the sheriffs' deeds were inadequate. The values of the properties when plaintiff purchased were not shown. However, this point was not raised until these defendants' briefs were filed here. The question was not raised below by either the pleadings or the evidence. The issue was not mentioned in the trial judge's excellent memorandum. It was not assigned in these defendants' motion for a new trial. We do not rule this assignment. Sec. 512.160(1), Mo. RS 1949, Sec. 847.140(a), Mo. RSA; Supreme Court Rule 3.23; and Oetting v. Green, 350 Mo. 457, 166 SW 2d 548.

We next consider the relative claims of plaintiff and defendant Sutton as to the 3951 Page property. Sutton claims under a trustee's deed, dated August 4, 1947, executed by "Helen Hearnes Stancil, formerly Helen Hearnes, trustee," in foreclosure of the March 18, 1939, Aetna trust deed and recorded August 5, 1947. The consideration was $6,000.

On July 29, 1947, plaintiff filed a lis pendens notice. The trial judge stated: "We find it to be a fact that Clement Sutton had no actual notice of any invalidity or infirmity with respect to the deed of trust being foreclosed. The question then arises as to whether he had constructive notice, as plaintiff contends, basing her contention upon a lis pendens notice filed July 29, 1947. We conclude that the lis pendens notice was ineffective in this instance, as appears more clearly from a chronological review of events." Such review was:

(1) On October 29, 1943, plaintiff received her sheriff's deed to the Sarah and 3949 Page properties.

(2) On January 11, 1944, plaintiff filed her first petition. It involved only these two properties, and Austin, Fairfax and Henry W. Austin were the only defendants. She sought to restrain foreclosures set for January 29, 1944. A temporary restraining order was dissolved but the foreclosures were prevented.

(3) On March 15, 1944, plaintiff received her sheriff's deed to the 3951 Page and Lambdin properties.

(4) On July 11, 1947, first publication was had of notice of foreclosure of the Aetna trust deed, the first mortgage on the 3951 Page property. The notice was headed, "In Re Aetna Realty Co." The only ones mentioned in the notice were Aetna and "Helen Stancil, formerly Helen Hearnes, trustee." The advertised sale date was August 4, 1947.

(5) On July 29, 1947, six days *before* that date, plaintiff filed her first amended petition in which, for the first time, the 3951 Page property was mentioned. However, no new defendants were added.

The recitals challenged the validity of both the Aetna-Hearnes-Austin *first* trust deed and the Henry W. Austin-Samuel E. Perry-Austin second trust deed; alleged that a foreclosure sale (no date mentioned) was advertised under the *second* trust deed, and asked that such sale be restrained.

(6) On July 29, 1947, the same day the first amended petition was filed, plaintiff filed her lis pendens notice. It listed as parties defendant in the pending case only the then defendants, viz., Austin, Fairfax and Henry W. Austin. Although the first amended petition had mentioned Aetna and Helen Hearnes, grantor and trustee in the *first* trust deed, and Samuel E. Perry, trustee in the *second* trust deed, these persons were not made new parties defendant. And, of course, the lis pendens notice contained no reference to any of them.

(7) On August 4, 1947, Sutton, who had seen the notice of the foreclosure sale, made his purchase. If plaintiff or her representative was present, she or he did not publicly call attention to the lis pendens notice or in any other way warn prospective bidders as to her claim or her lawsuit.

· (8) On August 21, 1947, seventeen days *after* Sutton received his trustee's deed in foreclosure of the *first* trust deed, plaintiff filed her second amended petition, in which she joined Sutton and Samuel E. Perry as defendants, but not Aetna or Helen Hearnes (or Helen Stancil). The theory of that petition was that Sutton bought as Austin's straw and, also, that the foreclosure was under the *second* trust deed.

(9) On September 19, 1947, plaintiff filed the petition upon which the case was tried and, for the first time, joined Aetna but not Helen Hearnes (or Helen Stancil). The latter was the only trustee in the trust deeds who never was made a party defendant.

"Under these circumstances," the trial judge ruled, "we cannot sustain plaintiff's ▇ claim that the lis pendens notice was effective to charge Clement Sutton with notice of an alleged invalidity of the deed of trust made by the Aetna Realty Co. to Helen Hearnes, trustee, on March 18, 1939. * * * To have been an effective lis pendens notice, notice would have had to describe not merely a lawsuit in which the 3951 Page parcel was mentioned but a suit which included as parties the parties to the deed of trust foreclosed. The lis pendens notice named as defendants only Benjamin F. Austin, Isabella Fairfax and Henry W. Austin, none of whose names appeared in the advertisement of the foreclosure. If Sutton had gone to the recorder of deeds' office and searched the index of lis pendens notices, he would not have found the name of the Aetna Realty Co. or of Helen Hearnes.

"If the present petition had been filed prior to the foreclosure sale of August 4, 1947, and if a lis pendens notice following such a pleading had been filed prior to the sale date, we would have a

different situation and defendant Sutton would be without defense. As it is, the state of the pleadings on July 29, 1947, and the limited number of the parties at that time prevent our holding that the lis pendens notice was effective to now bind Sutton by the invalidity of the deed of trust."

With one exception we approve this ruling. We need not and do not rule an assumed situation where both an amended petition, making Aetna (but not Helen Hearnes, or Helen Stancil, who was never joined) a party defendant, and a lis pendens notice based thereon, were filed prior to the foreclosure sale day.

Plaintiff does not contend that, when Sutton purchased and paid $6,000 for the property, he had actual notice of her claims against the other defendants or of the pendency of her suit. She asserts, however, that her lis pendens notice was constructive notice to him. We do not agree.

A notice of the pendency of a cause based upon an equitable claim affecting title to land must set out the names of the parties to the cause. Sec. 527.260, Mo. RS 1949, Sec. 3545, Mo. RSA. See 54 CJS, Lis Pendens, Sec. 25, p. 595. The common law rule was: "No decree bindeth any that cometh in bona fide, by conveyance from the defendant before the bill exhibited, and is made no party, neither by bill nor the order * * *." Rule 12, Bacon's Chancery Ordinances.

"If, although a suit is pending, the person holding the title to the property has not been made a party to the suit, so that there is a lis pendens as against him, a purchaser from the person so holding the title, without actual notice of the claims of the complainant in the bill, will not be bound by the determination of the suit. To affect a purchaser, who comes in pendente lite, under the holder of the legal title, with constructive notice of the equity claimed against it, such holder of the legal title must have been impleaded at the time of purchase. If he should be made a party after the purchase, the lis pendens would not take effect by relation, so as to charge the purchaser with notice, although the property may have been specially designated in the bill. It would be a great hardship, and public policy would not justify a requirement that a purchaser make investigation outside of the parties to the record, in pending suits, to ascertain the possible rights in the property of persons other than the parties to the litigation, or that the purchaser should deal with the property, at the peril of subsequently having the title of such other persons drawn into the pending litigation." Bennett, Lis Pendens, Sec. 97, p. 162. See 54 CJS, Lis Pendens, Sec. 42, p. 616; and 34 Am. Jur., Lis Pendens, Sec. 10, p. 368.

"Where the original bill or petition does not involve the property, but, pending the suit, an amendment or amended petition or bill is filed alleging new matter, and involving property not before in litigation, the lis pendens created by the amendment will commence

from the filing of the amendment or amended pleading, and will not relate back to the commencement of the action so as to affect intervening rights.'' Bennett, Lis Pendens, Sec. 32, p. 97; and see also Sec. 95, p. 160. See 54 CJS, Lis Pendens, Sec. 34, p. 600; and 34 Am. Jur., Lis Pendens, Sec. 29, p. 384.

In Jacobs v. Smith, 89 Mo. 673, 2 SW 13, a lis pendens notice was filed in a suit involving a deed to grantee defendant, alleged to have been a fraud upon the deceased grantor's creditors. Thereafter, the grantee defendant executed a mortgage which was later foreclosed. Shapley, the purchaser, paid a valuable consideration and had no actual notice of the alleged fraud. Thereafter, other creditors of the grantor were made parties plaintiff and Shapley was joined as party defendant. We held that the rights of the new plaintiffs were subordinate to Shapley's.

The 3951 Page property was not mentioned in the initial petition. On July 11, 1947, three and one-half years after its filing, the first notice of foreclosure of the trust deed on that property appeared, the sale being set for August 4. Six days before that date, plaintiff, for the first time, amended her petition and filed her lis pendens notice. She did not then join the grantor and trustee in the trust deed being foreclosed. She did not then plead a cause of action against either. The defendants in the case were still only Austin, Fairfax and Henry W. Austin. When the lis pendens notice was filed, neither Aetna nor Helen Hearnes (or Helen Stancil) was a party to plaintiff's lawsuit. Helen Hearnes (or Helen Stancil) was never made a party. Aetna was not made a party until *after* the foreclosure sale. The name of neither Aetna nor Helen Hearnes (or Helen Stancil) appeared in the notice, the only such notice filed.

It is not material that the notice was filed *before,* and that Sutton and Aetna were joined *after,* the sale. Obviously Sutton could not have been joined before the sale. Assuming without deciding that Helen Hearnes (or Helen Stancil) was not a necessary party, the determinative fact is that Aetna was not a party when the notice was filed. Such notice was not constructive notice to Sutton of plaintiff's equitable claim against Austin, Aetna or Helen Hearnes (or Helen Stancil) on the date of the foreclosure sale. Sec. 527.260, Mo. RS 1949, Sec. 3545, Mo. RSA.

The judgment is affirmed. *Van Osdol* and *Coil,* CC., concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.