**David M. DOERHOFF, Appellant,**

v.

**Rachelle L. SALMONS, Respondent.**

**No. WD 63751.**

Missouri Court of Appeals, Western District.

May 17, 2005.

Kenneth C. Hensley, Raymore, for Appellant.

James Edward Hoke, Harrisonville, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

David Doerhoff ("Father") appeals from a judgment modifying a joint custody decree that reduced his overnight parenting time with his two children from approximately either 130 or 150 nights per year to between 73 and 89 nights per year. Finding that the trial court's judgment was not supported by substantial evidence, we reverse the judgment and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The marriage of David Doerhoff ("Father") and Rachelle Salmons ("Mother") was dissolved in 1999. There was one child born of the marriage and one child adopted during the marriage. The children are currently ten and eight years of age. In the dissolution judgment, the parties were awarded joint physical and legal custody of the children. Pursuant to the parenting plan adopted by the court and incorporated into the dissolution decree, Father was to receive the following parenting time:

(1) 5:00 P.M. Saturday to 8:00 P.M. Sunday every other weekend

(2) Every other Monday from 5:00 P.M. until 8:00 A.M. Tuesday

(3) Every other Wednesday from 5:00 P.M. until 8:00 A.M. Thursday

(4) Every Friday from 5:00 P.M. until 5:00 P.M. Saturday

This yielded roughly 130 overnights with Father per year, subject to variation based upon holidays and special occasions that took precedence over the regular schedule. The parenting plan also provided that each parent would receive an unspecified period of "extended time for the purpose of taking the children on vacations," with the parties directed to agree each year on what those periods would be.

The parties, however, did not follow that schedule after entry of the dissolution judgment. Instead, on alternating weeks, Father would pick the children up after school on Thursday and have parenting time with them until he would drop them off to school the following Monday morning. On the other weeks, Father would pick up the children on Thursday afternoon and take them to Mother's residence Saturday afternoon. This yielded Father nearly 150 overnights with the children per year, again subject to variation due to holidays and other occasions.

The parties without judicial confirmation or apparent problem followed this schedule until late 2002. At that time Father requested, as a benefit to his work schedule, that parenting time be alternated on a weekly basis. The parties engaged in mediation and allegedly reached some agreement that was never reduced to writing. In early 2003, the parties briefly tried this schedule where each parent would have the children in alternating weeks. After the second week, Mother insisted that the

schedule be discontinued, as she believed the children did not adapt well to that schedule. Rather than return to the schedule they had been actually following, however, Mother insisted, apparently due to advice of counsel, upon following the schedule that had been incorporated into the dissolution decree (but had never been followed by the parties). At some point in this process Father filed a motion to modify alleging that there had been a change in circumstances and that the best interests of the children required a modification. Parenting time thereafter proceeded pursuant to the original dissolution schedule until the modification trial below. Father's motion to modify alleged several changes of circumstances, particularly the fact that the parties had not followed the parenting time schedule in the dissolution decree for the first two years following that prior judgment.

The matter proceeded to trial. In its judgment, the court adopted Mother's proposed parenting plan.[1] Under that parenting plan, Father was granted parenting time with the children on alternating weekends from 5:00 P.M. Friday to 5:00 P.M. on Sunday, as well as every Tuesday from 4:00 P.M. until 8:00 P.M. He was also given parenting time with the children during the summers: he would have the children for two weeks, then Mother would have the children for one week, then Father would have them for two weeks, and so on. Each parent would also have an uninterrupted two-week period with the children for taking vacations. It also included provisions for the division of time with the children for holidays and special occasions. The court said that the parties retained

joint legal and physical custody of the children.

Father appeals.

## DISCUSSION

In reviewing a judgment modifying the custody provisions of a prior dissolution decree, we may reverse only upon a showing that the judgment erroneously declared or applied the law or that the judgment was not supported by substantial evidence or was against the weight of the evidence. *Suffian v. Usher,* 19 S.W.3d 130, 135–36 (Mo. banc 2000). We view the evidence and permissible inferences we may draw therefrom in the light most favorable to the trial court's judgment. *Id.* However, we cannot supply missing evidence or give a party the benefit of unreasonable, speculative, or forced inferences. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528, 537 (Mo. banc 2002).

Father presents two points on appeal. He first contends that the trial court erred on the grounds that its adoption of Mother's parenting plan was not supported by substantial evidence and was against the weight of the evidence.

As Father was seeking to modify a prior joint custody decree, it was his burden to allege and prove that a change of circumstances necessitated modification of the prior decree. Having pleaded and presented evidence of changed circumstances, he is effectively bound by the decision of the modification court finding a change of circumstances. Mother seizes upon this and argues that Father, whose overnights

---

1. The parties disagree as to how many overnights Father receives under the modification judgment. Father takes the position that this parenting plan yields him only 73 overnights with the children per year. Mother contends that Father actually receives at least 89 overnights under that judgment. As will be discussed below, under either party's calculation, the modification judgment constitutes a significant reduction in Father's parenting time.

were reduced in the modification judgment, cannot now complain at least on the basis that there was no change of circumstances. Thus, Father is relegated to arguing that the modification order was not in the best interests of the children.

■ Crucially, in our view, the trial court was faced with the issue of modifying a judgment that had never been followed by the parties. Instead, for three years, the parties had followed a division of parenting time that yielded Father roughly 150 overnights with the children. We acknowledge that, from a legal standpoint, a modification court must look to the last court decree in determining whether there has been a change of circumstances. *See Meyer v. Block,* 123 S.W.3d 316, 321 (Mo. App.2003). Nevertheless, the trial court, having determined that there had been a change of circumstances and engaging in its best interests analysis, should consider the practical reality that the parties have devised and followed their own schedule without substantial problem in evaluating what parenting time schedule would be in a child's best interests.[2]

Father contended that there had been a change of circumstances because, after the failed two-week test where each parent had the children in alternating weeks, Mother insisted on performance with the original decree schedule, as opposed to returning to the *de facto* schedule that they had actually employed for three years. It appears, based upon her testimony, that Mother's position was based upon advice of counsel, rather than a belief that the parenting time schedule in the decree was in the children's best interests. In fact, Mother agreed that the original

decree was not in the children's best interests.

■ As with any other issue regarding child custody, in determining whether a particular parenting plan would be in a child's best interest, the trial court must consider a number of factors. Among the factors to be considered is providing for frequent, continuing, and meaningful contact with both parents. § 452.375.2(1), RSMo. The trial court's judgment, here, represents a dramatic reduction in Father's parenting time and the frequency of such parenting time. The modification judgment allocates him between roughly forty and fifty-seven fewer overnights compared to the parenting plan from the dissolution judgment. Compared to the parenting time Father received under the parenting time informal arrangement followed by the parties after the dissolution, the modification nearly halves Father's parenting time with the children.

■ Parenting time need not be divided equally between the parents in a joint custody context. *Simon–Harris v. Harris,* 138 S.W.3d 170, 178 (Mo.App. 2004). Nor do we suggest that the modification, here, is *per se* improper when the parents share joint physical custody. The question, here, is whether there was an evidentiary basis supporting the modification ordered by the court. Modification is proper only when there is substantial evidence in the record that modification would be in the child's best interests. *See Weaver v. Kelling,* 53 S.W.3d 610, 613 (Mo.App.2001). Thus, in order to substantially curtail one parent's parenting time in a modification judgment, there must evidence to support that reduction. In other

---

2. Section 452.375.2(1), RSMo, requires that the court consider the wishes of the child's parents as a factor in determining custody issues. While those wishes are often presented through the parenting plans proposed by the parties and testimony by the parents, the course of the parents' conduct prior to the filing of a motion to modify can sometimes shed light on those wishes, as well.

words, there must be evidence in the record to show that such alteration in parenting time is in the child's best interests.

On appeal, Mother takes the position that the parenting plan adopted by the court was supported by substantial evidence and that it was in the children's best interests because it provided a stable schedule for them that would not interfere with their schooling and extracurricular activities, while still affording adequate parenting time with the children. A trial court must consider a child's adjustment to his or her home, school, and community in conducting a best interests analysis. *See* Section 452.375.2(5), RSMo.

■ There was minimal evidence regarding the children's school and extracurricular activities presented at trial, however. Mother testified that one child was participating in soccer while the other one had participated in soccer, as well, but had recently begun to pursue gymnastics, instead. There was no testimony or other evidence apparently offered, however, with regard to the children's actual schedule of activities. The only evidence with regard to what impact parenting time with Father would have on the children's participation in extracurricular activities, was that the parenting time schedule from the original dissolution decree (that had, again, only been followed for a short time prior to the filing of Father's motion to modify) was difficult to observe due to the children's school activities. A child's extracurricular activities may be an appropriate consideration in allocating parenting time between parents. However, for this consideration to be a basis for a substantial reduction in Father's parenting time, there must be substantial evidence regarding those activities and how they necessitate such a reduction. Here, there was no substantial evidence regarding the children's extracurricular activities or how they related to

Father's parenting time. Thus, the trial court could not use this as a proper basis for supporting a finding that the parenting plan adopted by the court, reducing Father's parenting time, was in the children's best interests.

The trial court, in verbally announcing its judgment, discussed its belief that "the children need to be in one location at night after school." However, the only evidence to suggest that the children had been negatively impacted in any manner by a schedule where they spent some school nights with Father and some with Mother was the alternating week schedule that was briefly attempted by the parties. As discussed above, there was also testimony that the parenting time schedule from the original decree was difficult to follow due to the children's extracurricular activities. There was no evidence that the schedule that the parties had actually followed after the dissolution had any adverse effect on the children.

While we must view the evidence in the light most favorable to the judgment, the record must contain sufficient evidence to support a conclusion that the modified parenting plan adopted by the court is in the children's best interests. *See Riley v. Riley*, 643 S.W.2d 298, 300 (Mo.App.1982) (trial court can only act to modify custody upon presentation of facts that show that a change of custody is in the child's best interests). Here, there is no such evidence to support that finding, either directly or by reasonable inference.

We, therefore, conclude that the trial court's judgment is not supported by the evidence and sustain Father's first point on appeal. As this issue is dispositive, we do not reach his second point on appeal, which contends that the trial court erred in adopting Mother's parenting plan because she failed to include any affirmative prayer for relief in her pleadings.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

PATRICIA A. BRECKENRIDGE, Judge, and JOSEPH M. ELLIS, Judge, concur.