

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel.                              )          *Opinion issued April 6, 2021*
BEUTLER, INC. d/b/a GEORGE J. SHAW         )
CONSTRUCTION CO. and                       )
BRIAN HENDERSON,                           )
                                           )
                Relators,          )
                                           )
v.                                         )          No. SC98251
                                           )
THE HONORABLE SANDRA C. MIDKIFF,           )
                                           )
                Respondent.        )

## ORIGINAL PROCEEDING IN PROHIBITION

Joshua McArthur ("McArthur"), an employee of R&B Trucking, filed a negligence suit against Brian Henderson ("Henderson") and Beutler, Inc. d/b/a George J. Shaw Construction Co. ("Shaw") for injuries McArthur sustained while operating a dump truck on a construction site. Shaw and Henderson filed a motion for summary judgment, asserting immunity from suit under the workers' compensation exclusivity doctrine. The circuit court overruled the motion. Shaw and Henderson now seek a writ of mandamus directing the circuit court to enter summary judgment in their favor. This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, § 4.1.

Because Shaw is McArthur's statutory employer under section 287.040.2[1] and Henderson is McArthur's statutory co-employee under section 287.120.1, each is immune from suit. This Court's preliminary writ is now made permanent.

## Background

On September 30, 2016, McArthur was injured while operating a dump truck for R&B Trucking at the Cerner Trails Campus construction project in Jackson County. Henderson, who was employed by Shaw, was performing excavation work on the same project and "dumped an oversized load of wet clay, dirt, and boulder(s) into the bed of the dump truck" that McArthur operated. The force of this drop propelled McArthur into the ceiling of the cab, causing substantial injuries. McArthur received workers' compensation benefits arising out of the incident from his direct employer, R&B Trucking. On February 26, 2018, McArthur filed a negligence action against Henderson and Shaw.

The chain of subcontractors connecting Shaw to McArthur is as follows: the Cerner Trails Campus construction project was owned by Cerner Properties Development, Inc. ("Cerner Properties"). Cerner Properties hired J.E. Dunn Construction ("Dunn") to serve as the general contractor for the project, and Dunn hired Shaw as a subcontractor to provide excavation services for the project. Shaw entered into a separate agreement with C-Sharp Trucking ("C-Sharp") to haul material excavated by Shaw on and off the project site. C-Sharp then entered into a separate agreement with R&B

---

[1] All statutory references are to RSMo Supp. 2017 unless otherwise noted.

Trucking to perform a portion of the work C-Sharp was obligated to perform for Shaw. Put simply, R&B Trucking was a subcontractor to Shaw's subcontractor, C-Sharp.

In their amended answers to McArthur's negligence petition, Shaw and Henderson pleaded as an affirmative defense that McArthur's common law action was "barred by the workers' compensation exclusivity doctrine" because Shaw was McArthur's statutory employer and Henderson was McArthur's statutory co-employee under section 287.040. Shaw and Henderson then filed a motion for summary judgment, asserting immunity from suit under the workers' compensation exclusivity doctrine. The circuit court overruled the motion, finding the relationship between R&B Trucking and C-Sharp was a "relationship between a for-hire motor carrier operating within a commercial zone … and an owner, as defined in section 301.020 and operator of a motor vehicle," per section 287.040.4, thereby negating Shaw's status as McArthur's "statutory employer." Shaw and Henderson petitioned this Court for a writ of mandamus directing the circuit court to vacate its initial judgment overruling Shaw and Henderson's motion for summary judgment and to enter summary judgment in their favor.

## Analysis

A writ of mandamus is available only if the relator demonstrates a "clear, unequivocal, specific right to a thing claimed." *State ex rel. Reg'l Convention v. Burton*, 533 S.W.3d 223, 226 (Mo. banc 2017) (quotation marks omitted). However, "[w]hen a defendant is entitled to immunity as a matter of law, prohibition is an appropriate remedy." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019) (quotation marks omitted). Shaw and Henderson are claiming immunity from common

law suit under section 287.040, rendering prohibition an appropriate remedy. This Court has discretion to treat a "relator's petition for a writ of mandamus as one for a writ of prohibition." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994).

Under Missouri's workers' compensation laws, in exchange for providing mandatory workers' compensation coverage – without regard to fault – employers and their employees are granted immunity from civil lawsuits arising out of workplace injuries. *See* § 287.120. "The Workers' Compensation Law … supplants the common law in determining the remedies for on-the-job injuries." *Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120, 121 (Mo. banc 1998).

Section 287.040 extends the workers' compensation obligations (and civil immunity protections) to "statutory employers." *See* § 287.040. If an injured employee qualifies as a "statutory employee" of the "statutory employer," their right to recover under workers' compensation laws excludes all other rights and remedies the employee might have. Section 287.040 is designed to prevent employers from dodging workers' compensation obligations by hiring independent contractors by "defining the company that hires the independent contractor as a statutory employer." *McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 480 (Mo. banc 2009).

Section 287.040 sets out the definition for "statutory employer":

Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed

4

on or about the premises of the employer while doing work which is in the usual course of his business.

§ 287.040.1. The status as a "statutory employer" survives any chain of contractors and subcontractors because an "independent contractor ***shall be deemed to be the employer of the employees of his subcontractors and their subcontractors*** when employed on or about the premises where the principal contractor is doing work." § 287.040.2 (emphasis added). Here, there is an unbroken chain of contractor-subcontractor relationships making Shaw McArthur's statutory employer.

The circuit court concluded the chain of subcontractors was broken by the relationship between C-Sharp and R&B Trucking, finding it met the exception from workers' compensation exclusivity provided in section 287.040.4. Section 287.040.4 provides:

> The provisions of this section shall not apply to the relationship between a for-hire motor carrier operating within a commercial zone as defined in section 390.020 or 390.041 or operating under a certificate issued by the Missouri department of transportation or by the United States Department of Transportation, or any of its subagencies, and an owner, as defined in section 301.010,[2] and operator of a motor vehicle.

The circuit court concluded that R&B was a for-hire motor carrier operating within a section 390.020 commercial zone[3] and under a MODOT-issued certificate and that

---

[2] "Owner" is defined as "any person, firm, corporation or association, who holds the legal title to a vehicle …." § 301.010(43). "Operator" is defined as "any person who operates or drives a motor vehicle." § 301.010(42).

[3] "Commercial zone" is defined as:
> [A]ny municipality within this state together with that territory either within or without the State of Missouri, extending one mile beyond the corporate limits of such municipality and one additional mile for each fifty thousand inhabitants or portion thereof ….

5

C-Sharp was an owner and operator of a motor vehicle under section 301.010. Thus, the circuit court concluded, the relationship between C-Sharp and R&B Trucking was exempt from the exclusivity provision and broke the chain of contractor-subcontractors that, otherwise, would make Shaw McArthur's statutory employer.

Shaw and Henderson argue the exception found in section 287.040.4 is inapplicable to the underlying case because that exception applies only to the relationship between a for-hire motor carrier and an owner-operator of a motor vehicle. Shaw and Henderson contend this means for-hire motor carriers are not responsible for workers' compensation claims by independent owner-operators and, by the same token, would not be entitled to immunity from civil lawsuits for negligence brought against them by those owner-operators. Shaw and Henderson allege the circuit court's analysis focused on the wrong relationship when determining the exception in section 287.040.4 applied; they argue the focus should not have been on the relationship between C-Sharp and R&B Trucking but, rather, on the relationship between McArthur and Shaw. Shaw and Henderson are correct.

The circuit court's findings regarding the application of section 287.040.4 are erroneous for several reasons. Section 301.010 includes statutory entities in its definition of "owner," but it notably excludes statutory entities from its definition of "operator." C-Sharp qualifies as an "owner" under section 301.010, but it does not qualify as an "operator." As a result, section 287.040.4 does not apply to C-Sharp's relationship with R&B Trucking. It follows, therefore, that the "relationship" outlined in section 287.040.4

§ 390.020(4). The circuit court found R&B was operating in Kansas City, Missouri.

6

is one in which the for-hire motor carrier is the employer and the owner-operator is the contractor hired as a driver by the carrier. The exception in section 287.040.4 applies only when the injured worker is a party to the relationship, not when someone upstream from the injured worker is a party. McArthur tries to avoid this result by claiming there were genuine issues of material fact concerning whether (and how) section 287.040.4 applies. On the stipulated and agreed facts, however, all of the facts necessary to determine whether (or how) to apply section 287.040.4 are undisputed and only legal issues remain.

Because the exception in section 287.040.4 does not apply to break the chain of subcontractors, it is clear from the language of section 287.040.2 that Shaw is McArthur's statutory employer. Shaw, as an independent contractor, is the statutory employer of Shaw's subcontractors' employees. If Shaw's subcontractors hire subcontractors of their own, section 287.040.2 provides that Shaw is deemed to be the statutory employer of the employees of those subcontractors as well. Because R&B Trucking is the subcontractor of C-Sharp and C-Sharp is the subcontractor of Shaw, it is inescapable under section 287.040.2 that Shaw is the statutory employer of R&B Trucking's employees, including McArthur. Accordingly, Shaw is immune from suit. And it follows that Henderson also is immune as McArthur's statutory co-employee because Henderson is an employee of Shaw, who is McArthur's statutory employer. *See* § 287.120.1 ("Any employee of such employer shall not be liable for any injury.").

McArthur also raised an argument in the circuit court (which was not addressed in the circuit court's order overruling the motion for summary judgment) and before this

7

Court that McArthur's constitutional right to trial by jury is violated by the application of the statutory employment defense in this case. McArthur contends the workers' compensation regime does not replace an employee's cause of action against a third party for negligence and a statute that abrogates the right to trial by jury for an existing cause of action is invalid because it infringes upon a constitutional right.

The constitutional validity of the workers' compensation scheme has long been upheld. The ability of the legislature to "regulate or entirely abolish the common-law rules of liability and the defenses of fellow servants and contributory negligence and of assumption of risk is thoroughly established …." *De May v. Liberty Foundry Co.*, 37 S.W.2d 640, 647 (Mo. 1931). No reason exists "why [the legislature] may not require compensation to be made to an employee for accidental injuries received in the course of his employment in hazardous occupations, according to a different rule from that prescribed by the common law, and place the supervision of the new plan in the hands of an administrative commission instead of the courts." *Id.* (quotation marks omitted).

McArthur contends his claims are different because they are asserted against third parties and, therefore, have not been abrogated. As stated above, however, McArthur's claims are covered by the workers' compensation statutes and the exclusive remedy provision is not limited to claims against direct employers – it also applies to statutory employers and, under the circumstances in this case, statutory co-employees. The workers' compensation regime replaces an employee's cause of action against statutory employers. Direct and statutory employers both are required to provide workers' compensation protection and both are entitled to civil immunity. The application of the

statutory employment defense in this case does not violate McArthur's constitutional right to a trial by jury.

## Conclusion

For the reasons set forth above, this Court's preliminary writ of prohibition is now made permanent.

_____
Paul C. Wilson, Judge

Draper, C.J., Russell, Powell, Breckenridge,
and Fischer, JJ., concur.

9